

**FILED**

Dec 06 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ armincortez        DEPUTY

1
2
3
4

Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)
Email: anton@antonewing.com

5

6   Plaintiff pro se

7

8   # UNITED STATES FEDERAL DISTRICT COURT

9   # SOUTHERN DISTRICT OF CALIFORNIA

10

11   Anton A. Ewing,

12                    Plaintiff,

13   vs.

14   EMIL YASHAYEV, an individual,

15

16   ADS MANAGEMENT GROUP, LLC,

17                    Defendants

Case No.: **'24CV2280 JO   AHG**

**COMPLAINT**
**1. 47 U.S.C. §227 (TCPA)**
**2. PC §637.2 / 632.7 (CIPA)**

18       Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this

19   Complaint for money damages and injunctive relief, demanding a trial by jury,

20
21   against Defendant Emil Yashayev, an individual  (herein "Yashayev") and his

22   company, ADS MANAGEMENT GROUP, LLC (doing business as Biz Fund

23   Network), to stop said defendants from violating the Telephone Consumer

24
25   Protection Act and the Telemarketing Sales Rule by sending telemarketing text

26   messages and calling with prerecorded artificial voice messages to Plaintiff's

27
28   personal residential cellular phone (ending in -9640), which is registered on

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 1

24cv

www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and where indicated, upon information and belief, including investigation conducted by Plaintiff[1].  Plaintiff is suing to stop each Defendant's practice of sending text messages using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop each Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting each Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by each Defendant's conduct.

### PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was

---

[1] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 2

24cv

also the owner and sole user of personal, private residential cellular phone number 619-719-9640[2].

2. Plaintiff has been repeatedly called and texted by Defendant Yashayev without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov of the personal private residential number 619-719-9640. The FCC has ruled that a text is treated the same as a call under the TCPA. Whether a defendant sends a text or makes a call, both are violations.

3. Defendant YASHAYEV is a person that conducts business throughout this District, in San Diego, California. Defendant YASHAYEV is a "person" as defined by as defined by 47 USC §153(39).

4. Defendant YASHAYEV is located in New Jersey. Yashayev has been sued previously for TCPA violations.

5. Defendant ADS MANAGEMENT GROUP, LLC ("ADS MANAGEMENT GROUP") is a New Jersey Limited Liability Company, is a person defined by 47 USC §153(39) and is owned, operated and managed by Defendant

---

[2] For clarity, this number is not a hardwired landline. Defendant's attorney is expressly on notice.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 3

24cv

Emil Yashayev. ADS MANAGEMENT GROUP does business in San Diego and has purposefully availed itself of the benefits and protections of California law by telemarketing into San Diego.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

7. This Court has personal jurisdiction over each Defendant since each Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that they conduct here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District. Defendants also expressly contested to jurisdiction here by signing the settlement agreement that contained a venue and jurisdiction clause promising that they would subject themselves to this Court's authority and power.

8. Plaintiff is informed and believes that at all relevant times, Defendant Yashayev was acting as an agent and/or employee of each of Defendant ADS MANAGEMENT GROUP or that Defendant ADS MANAGEMENT GROUP was acting as the agent of Yashayev and was acting within the

course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.  Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants[3].  ADS Management Group is also liable under *respondeat superior* rules of responsibility.

9. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording.

10. Defendant YASHAYEV and Defendant ADS MANAGEMENT GROUP have purposefully directed its activities into California.  Area code 619 is entirely within San Diego County.

## INTRODUCTION

11. This is*, inter alia,* a *Summers v. Tice*, 33 Cal. 2d 80, 199 P.2d 1 (1948) case. That is, both defendants named herein are liable for the TCPA violations

---

[3] 21-cv-01204-H-WVG, PageID.3, ECF No. 1, *Benitez vs. United Debt Settlement, LLC* (SD CA 7/1/2021)
COMPLAINT  1. 47 U.S.C. §227 (TCPA)  2. PC §637.2 / 632.7 (CIPA) - 5

alleged herein.  If they cannot prove, at trial, which of them made the

injurious calls, then they are both liable.  In *Summers v. Tice:*

   a. Plaintiff's action was against both defendants for an injury to
      his right eye and face as the result of being struck by bird shot
      discharged from a shotgun. The case was tried by the court
      without a jury and the court found that on November 20, 1945,
      plaintiff and the two defendants were hunting quail on the open
      range. Each of the defendants was armed with a 12 gauge
      shotgun loaded with shells containing 7 1/2 size shot. Prior to
      going hunting plaintiff discussed the hunting procedure with
      defendants, indicating that they were to exercise care when
      shooting and to "keep in line." In the course of hunting plaintiff
      proceeded up a hill, thus placing the hunters at the points of a
      triangle. The view of defendants with reference to plaintiff was
      unobstructed and they knew his location. Defendant Tice
      flushed a quail which rose in flight to a 10-foot elevation and
      flew between plaintiff and defendants. Both defendants shot at
      the quail, shooting in plaintiff's direction. At that time
      defendants were 75 yards from plaintiff. One shot struck
      plaintiff in his eye and another in his upper lip. Finally it was
      found by the court that as the direct result of the shooting by
      defendants the shots struck plaintiff as above mentioned and
      that defendants were negligent in so shooting and plaintiff was
      not contributorily negligent. *Summers v. Tice*, 33 Cal. 2d 80,
      82-83, 199 P.2d 1, 1-2 (1948)

12. The named defendants in this matter are just like the defendants in *Summers
    vs. Tice.*  Only they know who made the injuring shot and the tortious calls.
    The law holds them both liable if they refuse to confess who did it.  Only
    significant forensic discovery with ferret out the telemarketing snake in this
    matter.

COMPLAINT  1. 47 U.S.C. §227 (TCPA)  2. PC §637.2 / 632.7 (CIPA) - 6

24cv

13. Plaintiff further alleges that both defendants are jointly and severally liable for the acts of eachother. They acted in concert and conspired together, thus they are jointly and severally liable for the acts alleged herein. Yashayev is the Manager, CEO and statutory agent for service of ADS MANAGEMENT GROUP. ADS MANAGEMENT GROUP is the alter ego of Yashayev because ADS MANAGEMENT GROUP, *inter alia*, fails to obey criminal laws and fails to follow any corporate policies and procedures. See 47 USC §227. The violation of 47 USC §501, by violating "what has been made unlawful" within §227, is a criminal act. No person can use an entity to engage in criminal activity devoid of personal liability therefor.

14. Plaintiff further alleges that Defendant Yashayev is liable for the acts of Defendant ADS MANAGEMENT GROUP, LLC because said LLC is committing a criminal act by violating 47 USC §501 by telemarketing Plaintiff. No person, including Defendant Yashayev, may set up a company, entity or other corporation to commit criminal acts without taking on personal liability for said criminal acts. The master is liable for the acts of its servants. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017); *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013) (noting that a "broad range of agency principles" may be employed in seeking to hold a principal liable for an agent's TCPA

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 7

violations); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018).

Congress has recently submitted a bill to increase the penalty for violating

the TCPA from a misdemeanor to a felony.    *See also* 15 USC §6102 et seq.

15. Plaintiff further alleges that Defendant ADS MANAGEMENT GROUP,

LLC is the agent of Yashayev and the alter ego of Yashayev, and therefore

Yashayev is personally liable for the TCPA violations of ADS

MANAGEMENT GROUP, LLC.  Rule 8 says that there must be a short and

plain statement.  This is the short and plain statement.

16. ADS Management Group, LLC is also known a Biz Fund Network.

### HISTORICAL BACKGROUND

17. According to YouMail which records and tracks telemarketing calls, in

2022, Americans received over 50 billion telemarketing calls[4].  That is over

one billion calls per week.  The federal court is the only place that is able to

stop these harassing calls.  There are 298 million cell phones in the US[5].

That translates to 170 robocalls per cell phone per year.  Plaintiff barely files

one case per month.  In the last year, Plaintiff has only filed 8 other cases.

---

[4] https://www.cnet.com/tech/mobile/tired-of-those-annoying-spam-calls-heres-how-to-stop-them/
[5] https://www.statista.com/topics/2711/us-smartphone-market/
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 8

18. In San Diego, according to https://robocallindex.com/, in December 2022 alone, residents here were harassed 40,681,100 times with robocalls from telemarketers. November 2022 saw 43.8 million robocalls to San Diegans. In 2022, there were approximately half a billion robocalls to 619, 760, and 858 area code phones in San Diego. The entire county of San Diego has a population of only 3.3 million people. That translates to over 150 robo calls per resident per year. The Federal District Court receives about 3,000 civil filing each year. Imagine the caseload if everyone enforced their rights to be left alone. If only 1% of the population of San Diego county enforced their rights by filing just one lawsuit, that would add an extra 33,000 civil filings to the docket. That is 11 times more than all the current civil cases combined. It is rather fortuitous that Anton Ewing spends his time filing his own cases and not putting on seminars and presentations teaching residents of San Diego how to sue telemarketers.

19. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of*

*Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).  Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.

20. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  Plaintiff has registered his phone.

21.  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

22. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

23. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

24. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

25. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

26. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com.  Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, times shares, vacation clubs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few.  This must stop.

27. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

28. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[6]

---

[6] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 11

29. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[7]

## SPECIFIC FACTUAL DETAILS OF THIS CASE ABOUT THESE DEFENDANTS

30. In recent years a troubling trend has surfaced in the merchant cash advance industry, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.   Defendant ADS Management Group is in fact charging usurious rates, without an exception and devoid of a CA CFL license.

31. This merchant cash advance telemarketing trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls

[7] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 12

24cv

without their (or his) consent and in violation of the TCPA, and in violation of CIPA.

32.  In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

33.  The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

34. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

35.  The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47

C.F.R. §64.1200(f)(12). In determining whether a communication

constitutes telemarketing, a court must evaluate the ultimate purpose of the

communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th

Cir. 2015).

36. "Neither the TCPA nor its implementing regulations 'require an explicit

mention of a good, product, or service' where the implication of an improper

purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores,*

*L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

37. "'Telemarketing' occurs when the context of a call indicates that it was

initiated and transmitted to a person for the purpose of promoting property,

goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. §

64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.

Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

38. The FCC has explained that calls motivated in part by the intent to sell

property, goods, or services are considered telemarketing under the TCPA.

*See In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true

whether call recipients are encouraged to purchase, rent, or invest in

property, goods, or services during the call or in the future. *Id.*

39. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

40. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

41. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

42. Defendant YASHAYEV is a merchant cash advance broker, selling his services throughout San Diego County. YASHAYEV is not licensed by the

California Department of Financial Protection and Innovation to actually sell, market or broker loans to California residents. Yashayev and his employee staff are just a group of telemarketers that scam California residents out of tens of thousands of dollars every day. Yashayev is also not licensed by the California Department of Real Estate nor does he hold a CFL license. Yashayev is required to be licensed and bonded. He is also not registered with the Secretary of State of California. Yashayev is cheating California out of taxes due.

43. Defendant YASHAYEV conducts business using the assumed name "Biz Fund Network" and owns and operates the website, https://www.bizfundnetwork.com/

44. Defendant YASHAYEV conducts telemarketing campaigns to sell her services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by and/or on behalf of Defendant YASHAYEV.

45. In placing unsolicited text messages to consumers, Defendant Yashayev sends or causes to be sent, multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640). Yashayev sent Plaintiff multiple text messages for solicitation purposes without consent.

46. In response to these text messages (and the calls), Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant YASHAYEV to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($405 filing fee plus service of process fees).

47. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call. Plaintiff was required to hit "1" to be transferred to a live operator. This happened on each and every call that is the subject of this lawsuit.

48. Plaintiff and neither Defendant Yashayev nor ADS MANAGEMENT GROUP have a pre-existing business relationship. Plaintiff has never been a customer or client of either Defendant Yashayev or ADS MANAGEMENT GROUP's business. Plaintiff directly and explicitly told either Defendant Yashayev or ADS MANAGEMENT GROUP to stop calling. Plaintiff has never even been to Michigan where Yashayev and ADS Management Group are located.

49. Specifically, the hardware and software used by either Defendant Yashayev or ADS MANAGEMENT GROUP has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 17

24cv

numbers, *en masse*, in an automated fashion without human intervention. Either Defendant Yashayev or ADS MANAGEMENT GROUP's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages simultaneously, without human intervention.  The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by either Defendant Yashayev or ADS MANAGEMENT GROUP for the calls.

50. The ten (10) text messages were sent by or on either Defendant Yashayev or ADS MANAGEMENT GROUP's behalf and with its knowledge and approval. Defendant YASHAYEV knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages.  The text messages were generic which indicates an ATDS was used by either Defendant Yashayev or ADS MANAGEMENT GROUP.  One text message read "*sent an email for a $50,000 request for equipment.*"  There were 21 calls in addition to the ten texts.

51. All ten of the text messages were sent via an ATDS at the direction and oversight of either Defendant Yashayev or ADS MANAGEMENT GROUP.

Said Defendants knew about, directed, ratified, and benefitted from the solicitation text messages.

52.  On information and belief and based on Plaintiff's vast knowledge and experience with these type of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a produced list for texting at a later date.[8]  Plaintiff alleges that this is exactly what Defendant YASHAYEV has done.

53. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of either Defendant Yashayev or ADS MANAGEMENT GROUP's employees, Emil Yashayev, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their loan programs.

---

[8] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
COMPLAINT   1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA) - 19

24cv

54. By sending unsolicited text messages as alleged herein, either Defendant Yashayev or ADS MANAGEMENT GROUP has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, either Defendant Yashayev or ADS MANAGEMENT GROUP sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

55. FCC regulations promulgated under the TCPA specifically prohibit either Defendant Yashayev or ADS MANAGEMENT GROUP from using an artificial or prerecorded voice to call Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[9]

---

[9] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 20

24cv

# PLAINTIFF EWING'S ALLEGATIONS

56. Either Defendant Yashayev or ADS MANAGEMENT GROUP called or texted Plaintiff Ewing 31 times on the following dates:

  a. November 15, 2024 from 203-391-3379 at 3:35 PM

  b. November 15, 2024 from 203-391-3379at 4:39 PM

  c. November 15, 2024 from 203-391-3379at 1:31 PM

  d. November 15, 2024 from 203-391-3379at 10:48 AM

  e. November 18, 2024 from 203-391-3379at 8:34 AM

  f. November 18, 2024 from 203-391-3379at 9:48 PM

  g. November 18, 2024 from 203-391-3379at 1:38 PM

  h. November 18, 2024 from 203-391-3379at 10:15 AM

  i. November 18, 2024 from 203-391-3379at 3:16 PM

  j. November 25, 2024 from 203-391-3379at 2:29 AM

  k. November 25, 2024 from 203-391-3379at 8:21 AM

  l. November 25, 2024 from 203-391-3379 at 2:21 PM

  m. November 25, 2024 from 203-391-3379 at 1:37 PM

  n. November 26, 2024 from 203-391-3379 at 7:58 AM

  o. November 26, 2024 from 203-391-3379 at 8:32 AM

  p. November 26, 2024 from 203-391-3379 at 1:25 PM

  q. November 26, 2024 from 203-391-3379 at 10:33 AM

24cv

r.  November 26, 2024 from 203-391-3379 at 7:14 PM

s.  November 29, 2024 from 203-391-3379 at 10:15 AM

t.  November 29, 2024 from 203-391-3379 at 9:26 AM

u.  November 29, 2024 from 203-391-3379 at 11:49 AM

v.  November 29, 2024 from 203-391-3379 at 10:53 AM

w. November 29, 2024 from 203-391-3379 at 11:12 PM

x.  November 29, 2024 from 203-391-3379 at 9:17 AM

y.  December 3, 2024 from 203-391-3379 at 2:13 PM

z.  December 3, 2024 from 203-391-3379 at 8:12 AM

aa. December 3, 2024 from 203-391-3379 at 4:32 PM

bb. December 3, 2024 from 203-391-3379 at 11:43 PM

cc. December 3, 2024 from 203-391-3379 at 6:15 AM

dd. December 4, 2024 from 203-391-3379 at 7:19 AM

ee. December 4, 2024 from 203-391-3379 at 1:27 PM

ff.  December 4, 2024 from 203-391-3379 at 8:14 AM

gg. December 4, 2024 from 203-391-3379 at 10:12 AM

hh. December 5, 2024 from 203-391-3379 at 11:12 AM

ii.  December 5, 2024 from 203-391-3379 at 1:01 PM

jj.  December 5, 2024 from 203-391-3379 at 1:14 PM

kk. December 5, 2024 from 203-391-3379 at 2:11 PM

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 22

24cv

ll.  December 5, 2024 from 203-391-3379 at 4:17 PM

mm.    December 5, 2024 from 203-391-3379 at 5:12 PM

57. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from either Defendant Yashayev or ADS MANAGEMENT GROUP.  Importantly, Plaintiff became enraged on each of the 21 telephone calls making very clear that the caller must never telemarket him ever again.  And yet, Defendant YASHAYEV keeps calling and texting.

58. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call.  Fortunately, since the STIR/Shaken[10] laws were made effective, this scam is now significantly attenuated.

59. Either Defendant Yashayev or ADS MANAGEMENT GROUP was calling to sell its merchant loan scams.  Either Defendant Yashayev or ADS MANAGEMENT GROUP's controlled and hired employee Emil Yashayev who stated that the business uses special software to obtain their telemarketing calling list to upload into the autodialer system.    Emil

---

[10] https://www.fcc.gov/call-authentication

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 23

24cv

Yashayev admitted that their telephone dialing system works automatically and autonomously without human intervention. Emil Yashayev described the dialer as having "artificial intelligence" and that it works automatically.

60. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued. Moreover, Plaintiff has expressly informed over one hundred TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation. At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

    a. "This email does not authorize you to call me for SOLICITATION. This email is not consent to TELEMARKET my phone number. Any calls without express authorized consent shall be treated as a violation of 47 USC §227. All calls are recorded."

61. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

62. The ten text messages that Plaintiff received are solicitations encouraging the purchase of Defendant YASHAYEV's services. Plaintiff is not suing for

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 24

24cv

illegal recording regarding the text messages. Plaintiff is suing for illegal recording, by Defendants, without consent, of the oral calls.

63. The ten text messages were sent by or on behalf of either Defendant Yashayev or ADS MANAGEMENT GROUP. The ten text messages were sent at either Defendant Yashayev or ADS MANAGEMENT GROUP direction, command and control.

64. Either Defendant Yashayev or ADS MANAGEMENT GROUP expressly and overtly controlled the exact generic content of the ten text messages.

65. The ten text messages did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

66. Said dialing system has the capacity to store and/or randomly generate phone numbers and to dial those numbers without human intervention.

67. Plaintiff Ewing never provided his phone number or his consent to either Defendant Yashayev or ADS MANAGEMENT GROUP to receive any solicitation from them or on their behalf. Prior to receiving the ten text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by either Defendant Yashayev or ADS MANAGEMENT GROUP.

68.  The unauthorized solicitation telephone text messages that Plaintiff received from either Defendant Yashayev or ADS MANAGEMENT GROUP, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

69.  Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

70.  The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).  At one or more instance during these calls, either Defendant Yashayev or ADS MANAGEMENT GROUP utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

71. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 26

24cv

72. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

73. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to either Defendant Yashayev or ADS MANAGEMENT GROUP for any purpose whatsoever.  In addition, Plaintiff told Defendant YASHAYEV at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant YASHAYEV contacting him.  Accordingly, Defendant YASHAYEV never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[11]

74. Plaintiff did not have a personal relationship with either Defendant Yashayev or ADS MANAGEMENT GROUP at any point in time.[12]

75. Upon information and belief, either Defendant Yashayev or ADS MANAGEMENT GROUP did not make the telephone solicitations in error.

---

[11] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[12] 21-cv-01123

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 27

24cv

76. When Plaintiff answered calls from either Defendant Yashayev or ADS MANAGEMENT GROUP, he heard a prerecorded message and had to wait on the line to be transferred to a live representative.

77. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

78. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

79. The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and *pro se* pleadings must continue to

be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

80. In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (*emphasis added*).

81. In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

82. The Sixth Circuit has recognized a distinction between automated calls placed by a dialing system and fielded by a live agent, and agentless prerecorded voice calls: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 29

24cv

message' on the one hand and 'calls place by 'live' persons' on the other."

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH,*
708 F.3d 737,743 (6th Cir. 2013). Similarly, the FTC has observed that
"prerecorded calls are by their very nature one-sided conversations, and if
there is no opportunity for consumers to ask questions, offers may not be
sufficiently clear for consumers to make informed choices before pressing a
button or saying yes to make a purchase." 73FR 51164-01, 51167 (Aug. 29,
2008).

83. Plaintiff has studied the code used to program predictive dialers and other
similarly-functioning autodialers in the past, with the assistance of experts
like Jeff Hansen and software engineers fluent in Java, and have found that
such autodialers, when used in automated mode, execute code that relies
upon random or sequential number generation to both store and produce
numbers to be dialed by the dialer. For instance, a common "parser" used in
SMS blasters and predictive dialing coding integrates the following open-
source Apache code into an autodialing dialing platform:

```
730 if (!this.recordList.isEmpty()) {

731 this.recordNumber++;

732 final String comment = sb == null ? null : sb.toString();

733 result=newCSVRecord(this,this.recordList.toArray(Constants.E
```

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 30

24cv

MPTY_STRING_ARRAY), comment,

734 this.recordNumber, startCharPosition);

735 }

736 return result;

737 }

84. These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file, will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention whatsoever, based on whatever abandonment rate is targeted by the operator of the dialing platform. The sequential number generator in the code above is executed in the process of mass predictive dialing. The program cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

85. Plaintiff alleges that Defendant ADS MANAGEMENT GROUP used a predictive dialing system with the similar capacity to autodial numbers as shown above. Functionally, that is simply how predictive dialers work. They rely on random or sequential number generators to instruct the data set to produce telephone numbers to the dialer. Without this key component, a

dialing campaign would require an agent to manually place the call, through organic decision making, or as was the case in *Duguid v. Facebook*, through some other organic one-to-one triggering event that instructs the dialer to place the call.  Plaintiff will not be able to demonstrate whether the code for Defendant's (ADS MANAGEMENT GROUP) dialing system contains such random or sequential number generators without doing discovery and obtaining the code for the dialing platform. Plaintiff makes these allegations on information and belief based on the volume of calls he received, the fact that there was a pause at the beginning of the calls, and the fact that the calls were spoofed, which are all indicia that they were autodialed with a predictive dialer.

86. The problem with these known realities is that because Plaintiff does not and could not ever have access to Defendant ADS MANAGEMENT GROUP's proprietary code, which is in its sole possession, Plaintiff cannot allege with any more specificity that the system's code contains such language. However, based on detailed discussions with experts and years of litigation and expertise surrounding such technology, Plaintiff has a legitimate and sufficient good faith basis to make these allegations, and assert that if the system is a traditional predictive dialer as alleged, then it will have some variation on the coding that is described herein, which will undoubtedly

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 32

include either random or sequential number generators that are being

executed in conjunction with storing and dialing the telephone numbers,

including the dialing of Plaintiff's phone number.  In Defendant ADS

MANAGEMENT GROUP's overzealous attempt to market its services, it

placed (and continues to place) phone calls via ATDS and prerecorded voice

calls to consumers who never provided consent to call and to consumers

having no relationship with either Defendant.


**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant YASHAYEV and Defendant ADS MANAGEMENT**
**GROUP)**

87. Plaintiff Ewing repeats and realleges paragraphs 1 through 86 of this

Complaint and incorporates them by reference.

88. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides

that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered her or her telephone

number on the national do-not-call registry of persons who do not wish to

receive telephone solicitations that is maintained by the federal

government."

89. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

90. Defendant YASHAYEV or Defendant ADS MANAGEMENT GROUP violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

91. Defendant YASHAYEV or Defendant ADS MANAGEMENT GROUP violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call and/or text message in a 12-month period made by or on behalf of Defendant YASHAYEV in violation of 47 C.F.R. § 64.1200, as described above.

92. Defendant YASHAYEV or Defendant ADS MANAGEMENT GROUP failed to obtain any prior express consent that included, as required by 47

C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing

the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

93. As a result of Defendant's conduct as alleged herein, Plaintiff suffered

actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,*

to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

94. Defendant YASHAYEV or Defendant ADS MANAGEMENT GROUP

used an ATDS to both send text messages and to dial Plaintiff's phone

number to play its artificial prerecorded voice message.

95. By sending unsolicited text messages to Plaintiff's cellular telephone

without prior express consent, and by utilizing an ATDS, Defendant

YASHAYEV or Defendant ADS MANAGEMENT GROUP violated 47

U.S.C. § 227(b)(1)(A)(iii).

96. To the extent Defendant's misconduct is determined to be willful and

knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the

amount of statutory damages recoverable by Plaintiff.

97. Defendant YASHAYEV or Defendant ADS MANAGEMENT GROUP violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

98. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

99. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for

maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 37

24cv

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

100.    Here, Defendant YASHAYEV or Defendant ADS MANAGEMENT

GROUP sent Plaintiff Ewing multiple unsolicited text messages after he had

submitted valid "STOP" and "BYE" requests.

101.    As a result of Defendant's knowing and/or willful violations of 47

U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B)

and 47 U.S.C. § 227(b)(3)(C).

### SECOND CLAIM FOR RELIEF
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant YASHAYEV and Defendant ADS MANAGEMENT**
**GROUP)**

102.    Plaintiff Ewing repeats and realleges paragraphs 1 through 86 of this

Complaint and incorporates them by reference.

103.    The foregoing acts and omissions of Defendant YASHAYEV or

Defendant ADS MANAGEMENT GROUP constitute numerous and

multiple knowing and/or willful violations of California's Invasion of

Privacy Act.

104.    As a result of Defendant's knowing and/or willful violations of PC

§632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per

call that was illegally recorded without Plaintiff's knowledge or consent.

105.      Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B);

e) An injunction requiring Defendant to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) for exemplary and punitive damages against Defendant in an amount to be determined with exactness at trial herein; and

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 40

24cv

h) Such further and other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Ewing requests a jury trial pursuant to the 7th Amended to the US

Constitution.

Dated this 6th day of December, 2024.

/s/ Anton Ewing

Anton A. Ewing, Plaintiff
(not a lawyer)

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 41

24cv